# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

KEWYN WILLIAMS,              )
                            )
    Plaintiff,           )
                            )
v.                          )
                            )          CV414-043
CAROLYN COLVIN,             )
Acting Commissioner of      )
Social Security,            )
                            )
    Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Kewyn Williams seeks judicial review of the Social Security Administration's denial of his application for Supplemental Security Income (SSI) benefits.

## I.  GOVERNING STANDARDS

In social security cases, courts

. . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II. ANALYSIS

Williams alleges disability beginning May 1, 2012, and was 54 years old when his SSI claim was denied. Tr. 63. He has a college education and past relevant work experience as a Colonel in the United States Army and a contractor providing military instruction. Tr. 167, 183. After a hearing, the ALJ issued an unfavorable decision. Tr. 1-4, 9-15.

The ALJ found that Graham's status as one who has undergone an aortic valve replacement and knee surgery satisfied the "severe impairment" requirement but did not meet or medically equal a Listing. Tr. 11-12. Based on the evidence of record, the ALJ found that he retained the RFC for light work, except that he can only "frequently" (rather than without limitation) operate right foot controls, climb stairs, balance, and stoop, and only occasionally climb ladders, kneel, crouch, and crawl. Tr. 12.

Williams, he determined, could perform the requirements of his past relevant work as a Director, Industrial Operations, and hence, was not disabled. Tr. 12-14. Williams disagrees, arguing that the ALJ erred in his evaluation of his credibility and the medical evidence, including his

RFC assessment and evaluation of an apparent conflict in plaintiff's testimony at the hearing.  Doc. 9.

### A.    Weighing Medical Evidence

### 1.    Dr. Kenneth Hardigan

Dr. Hardigan, who first examined Williams for a heart murmur in May 2014, recommended no exertional heavy weight lifting but advised that he engage in a regular exercise program and undergo antibiotic prophylaxis for nonsterile procedures.  Tr. 363-65.  Echocardiogram testing indicated clear to moderately severe aortic insufficiency, tr. 365, 440, moderate leaflet thickening and eccentric aortic regurgitation, tr. 374, 433, and a dystrophic aortic value with prolapse of the noncoronary cusp with small areas worrisome for vegetations, and a broad jet of moderate to severe, highly eccentric aortic inefficiency.  Tr. 370-71.  In other words, Williams had ongoing, developing cardiac issues.

A month later, Dr. Hardigan noted that plaintiff still needed intravenous antibiotics and that an aortic valve prosthesis would be required soon.  Tr. 437.  An echocardiogram noted degeneration of the aortic valve with at least moderate aortic regurgitation.  Tr. 528-32.  In July, severe aortic insufficiency with possible vegetations on the aortic

valve was observed, and the need for valve replacement was deemed "somewhat urgent." Tr. 968-72.

Williams was hospitalized for an aortic valve replacement due to aortic endocarditis and severe aortic insufficiency. Tr. 904-08. Though he did well immediately after surgery, he continued to experience some discomfort and occasional tachycardia arrhythmia symptoms upon awakening. *See* Tr. 1039, 1194, 1347, 1356. A few months after surgery, plaintiff was walking 2-3 miles several times a week and playing golf, tr. 1394, but continued feeling chest discomfort, fatigue, and a "sense of fluttering or pounding in his chest." Tr. 1350-52.

In June 2015, Dr. Hardigan completed a Medical Source Statement and diagnosed Williams with endocarditis, atrial fibrillation, and aortic valve replacement with a good prognosis. Tr. 1324. He opined that plaintiff could walk more than 10 city blocks at a moderate pace, stand and walk about 2 hours total and sit at least 6 hours total in an 8-hour day, lift up to 20 pounds occasionally and 50 pounds rarely, and occasionally twist and stoop. Tr. 1324-26. He also opined that plaintiff would need to take ten 10-20 minute unscheduled breaks during the workday due to his symptoms, which included palpitations, shortness of

breath, and medication effects. Tr. 1326.

Evaluating Williams under the multi-step process detailed above, the ALJ found his aortic valve replacement status constituted a severe impairment at Step 2 but did not find that it met or equaled a Listing at Step 3. Tr. 11-12. The ALJ accorded Dr. Hardigan's June 2015 opinion "some evidentiary weight" based "on the longitudinal relationship and area of specialization," but found the objective findings and William's activities of daily living failed to support the "frequency and duration" of Dr. Hardigan's opined unscheduled breaks. Tr. 13. Plaintiff insists the ALJ erred by failing to fully credit Dr. Hardigan's opinion. Doc. 9.

"As a general rule, 'the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists.'" *Black v. Colvin*, 2015 WL 7185506 at * 3 (S.D. Ga. Nov. 13, 2015) (quoting *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006), *adopted*, 2016 WL 296260 (S.D. Ga. Jan. 12, 2016)).

"The opinion of a treating physician, such as Dr. [Hardigan], 'must

be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (cites omitted).

The ALJ did not err in declining to fully credit the specific portion of Dr. Hardigan's opinion that was inconsistent with the overall record. On examination, plaintiff had normal vitals, a clear chest, and a normal cardiac examination one month before Dr. Hardigan's opinion. Following the surgery, plaintiff reported doing well with occasional discomfort and fatigue, tr. 1347, 1350, and no sustained arrhythmia or exercise intolerance were observed. Tr. 1356. He played golf and lifted light weights. Tr. 1353, 1356. Dr. Hardigan opined that plaintiff's prognosis was "good," he did not experience angina, his symptoms would only "rarely" interfere with his attention and concentration, he could walk at a modest pace more than 10 blocks without resting, and he would

be absent from work one or less times a month. Tr. 1324-27. Dr. Hardigan's opinion that plaintiff's workday would be interrupted by a 10-20 minute break at least 10 times a day (tr. 1326) cannot be reconciled with his clinical observations, other opined limitations, and plaintiff's admitted daily activities. Further, plaintiff's own discredited testimony (*see* § B below) that he requires significant breaks throughout the day, doc. 9 at 17, cannot be used to bolster Dr. Hardigan's internally inconsistent medical opinion. The ALJ did not err by according less than full credit to this opinion.

## 2. Reviewing Physicians

Williams argues that the ALJ erred by giving "some weight" to two reviewing physicians, Drs. Abraham Oyewo and Charles Jones, because they were based on an incomplete medical record. Doc. 9 at 18, *see* tr. 14. After properly discrediting Dr. Hardigan, the ALJ permissibly turned to non-examining reviewers to find that plaintiff retained the RFC to perform light work with postural restrictions. *See Jarret v. Comm'r of Soc. Sec.*, 422 Fed. App'x 869, 873-74 (11th Cir. 2011) (ALJ did not err in giving significant weight to agency reviewing physicians because good cause existed to discredit treating physician). Drs. Oyewo and Jones

reviewed the record and determined plaintiff could perform light work with postural restrictions to accommodate his knee impairment. Tr. 12; *see also* tr. 67-68, 77-79. The ALJ properly found that their opinions were consistent with the objective evidence, longitudinal treating record, and plaintiff's own admitted daily activities to determine that he was capable of working with these limitations. 20 C.F.R. § 416.97(e)(2)(i); SSR[2] 96-6p (state agency consultants are highly qualified experts whose opinions may be entitled to great weight when buttressed by the evidence). The ALJ did not err in his consideration of the reviewing physicians' medical opinions.

### 3.   Veterans Affairs Disability Rating

Williams also argues that the ALJ erred by failing to meaningfully address his Veterans Affairs (VA) 70% disability determination. Doc. 9 at 19; *see* tr. 142-44. Although the regulations provide that a disability determination by another agency is not binding on the Social Security Administration, 20 C.F.R. §§ 404.1504, 416.904, the Eleventh Circuit has made it clear that a VA disability rating "is evidence that should be

---

[2]   Social Security Rulings ("SSR") are final opinions and statements of policy by the Commissioner of Social Security, binding on all components of the Social Security Administration. 20 C.F.R. § 422.406(b)(1).

considered and is entitled to great weight." *Kemp v. Astrue*, 308 F. App'x

423, 426 (11th Cir. 2009); *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir.

1984).[3]   An ALJ is not required, however, to state the precise amount of

---

[3]   The standards for VA disability are similar to, but not interchangeable with, those for Social Security (SSA) disability.   *Compare* 38 C.F.R. § 4.1 *et seq.* (VA ratings) *with* 20 C.F.R. § 404.1 *et seq.* ([SSA] Disability); *see also* SSR 06-03p (the different standards and rules applied by other governmental agencies "may limit the relevance of a determination of disability made by another agency").   The "substantial difference between the criteria" used in social security and veteran's disability determinations is that the VA "requires less proof of disability than the Social Security Administration does." *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006). *See also Gyurko v. Harris*, 487 F. Supp. 1121, 1130 (D. Conn. 1980) ("the VA's ultimate determination [is] based on a less stringent test of 'disability' than the one guiding the ALJ"); *Tietze v. Richardson*, 342 F. Supp. 610, 614 (S.D. Tex. 1972) (the VA and SSA "have different concepts of disability, different eligibility requirements and are intended to accomplish different purposes"); 38 U.S.C. § 5107 (the VA "give[s] the benefit of the doubt to the claimant" whenever "there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter").

The SSA disability determination is based on a five-step sequential process, where the Commissioner is required to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) is *per se* disabled by an impairment, or can (4) return to his past relevant work or (5) perform other jobs despite the limitations imposed by his impairment(s).   20 C.F.R. §§ 404.1520, 416.920.   The VA does not follow this process.   *See* 38 C.F.R. § 4.1 *et seq.*   The VA instead applies a "schedule" of ratings for disabilities, where claimants are assigned a certain disability percentage for each impairment and the total disability is then scaled to calculate a disability "rating."   38 C.F.R. §§ 4.15, 4.71a.   The Commissioner does not assign a "percent" disability rating at all.   20 C.F.R. §§ 404.1520(g), 404.1560(c).

Under the VA regulations, a claimant is considered objectively disabled if he has an impairment that would render it "impossible for the average person" to obtain a substantially gainful occupation, regardless of whether the individual claimant could overcome the handicap of disability.   38 C.F.R. § 4.15.   In contrast, the Commissioner does not analyze the effect of the impairment on an "average" person -- only the particular claimant.   20 C.F.R. §§ 404.1520, 404.1560.   And, while both the VA and the Commissioner employ the terms "substantial" and "gainful" in describing the type of work that a claimant can or cannot perform, the definitions of these terms differ.   Under the VA definition, a "substantially gainful occupation" is one that is

weight given to the VA's disability determination so long as the record shows he expressly considered and closely scrutinized it. *Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 914 (11th Cir. 2015); *Kemp*, 308 F. App'x at 426; *Adams v. Comm'r of Soc. Sec.*, 542 F. Appx. 854, 856-57 (11th Cir. 2013).

In this case, the ALJ did not specifically address the consideration given to the VA's disability, if any, though he did evaluate the medical evidence submitted from the VA at Steps 4 and 5. *See* tr. 12-14. It is unclear from the ALJ's written decision whether he was even aware of the VA disability rating, which deemed plaintiff eligible for VA disability benefits based on service-connected carpal tunnel syndrome with degenerative change in his left wrist (10%) and right wrist (10%), ulcerative colitis (10%), anal fissures (0%), degenerative changes right knee (10%) and left knee (0%), degenerative changes cervical spine (10%),

---

"ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." *Pike v. Brown*, 8 Vet. App. 497 (1995); *Beaty v. Brown*, 6 Vet. App. 532, 538 (Vet. App. 1994) (also noting "substantially gainful employment suggests 'a living wage'"). Under the Commissioner's definition, "substantial gainful activity" is "work activity involving significant physical or mental activities" that is also "for pay or profit," 20 C.F.R. § 404.1572(a), (b). The definitions of available work differ as well, with the VA limited to occupations within the "community where [the claimant] resides," *Beaty*, 6 Vet. App. at 538, while the Commissioner must only identify potential work existing in "significant numbers" in the national economy to find a claimant not disabled. 20 C.F.R. § 404.1560(c)(1), (2).

chronic bursitis with degenerative changes left shoulder (10%) and right shoulder (10%), chronic arthralgia with diffuse arthritic changes left ankle (10%), and chronic posttraumatic arthropathy with degenerative changes right ankle (10%), for a combined disability rating of 70%.[4] Tr. 142-44.

The Commissioner contends that any error in failing to discuss the VA disability rating was harmless to the ultimate disability determination, because the ALJ properly considered the objective evidence of joint problems and degenerative changes -- including the VA records -- and did not find plaintiff's alleged joint problems severe. Doc. 10 at 8. The ALJ discussed the objective evidence from the VA records, *see* tr. 12-13, including imaging studies showing mild degenerative changes, tr. 662, 665, mild shoulder joint arthropathy, tr. 671, normal bilateral ankles, tr. 675-76, and an unremarkable thoracic and lumbar spine. Tr. 669-70. The ALJ, however, did not discuss later imaging of Williams' bilateral wrists, tr. 677-78 (demonstrating severe loss of radiocarpal joint space), and MRI imaging of the right knee,

---

[4]     The individual percentages do not form the combined rating; rather, the "combined disability rating" is formulated based on a "combined rating table that considers the effect [of his impairments] from the most serious to the least serious condition." Tr. 144.

tr. 667-68 (showing advanced osteoarthritis, "significant abnormalities of both the lateral and medial meniscus," and evidence of arthrofibrosis), much less *mention* the VA's disability rating. *See* tr. 11-14. Though ALJs are not required to refer specifically to every piece of evidence in their decision so long as the conclusion as a whole was supported by substantial evidence in the record, *see Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), here the ALJ completely omitted any reference whatsoever to this probative evidence.

While the Commissioner is correct that the ALJ referred to and discussed some of the medical records from the VA in his decision, that discussion cannot substitute for consideration of the rating decision itself. *Williams v. Barnhart*, 180 F. App'x 902 (11th Cir. 2006). The Commissioner's conclusion that "the ALJ's decision reflects that he considered the evidence from the VA in determining Plaintiff's ability to work," doc. 10 at 9, is pure speculation. Such post-hoc rationalizations cannot provide the basis for affirming the ALJ's decision. *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010). *See also Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (the ALJ must state specifically the weight accorded each item of evidence and the reasons for

her decision on the evidence). Unlike the situations in *Ostborg*, *Kemp*, or *Adams*, there is nothing in the ALJ's decision that indicates he considered the VA disability rating. *See* tr. 12-14. It is impossible to determine whether the ALJ simply overlooked the disability rating, or evaluated it and found it unsupported by other evidence in the record, or found some part of it relevant to the RFC assessment but forgot to include it.

"The responsibility for evaluating and assigning weight to the evidence is placed with the law judge, and not with the Commissioner's lawyer. Accordingly, the Commissioner's argument does not remedy the [ALJ]'s failure to address the VA disability rating." *Salamina v. Colvin*, 2013 WL 2352204 at *4 (M.D. Fla. May 29, 2013); *Williams*, 180 F. App'x 902. The case must be remanded for consideration of the VA disability rating.

## B. Williams' Credibility

The ALJ discredited plaintiff's testimony that he cannot perform his past relevant work based on an analysis of the objective medical evidence, treating record, and admitted activities of daily living. Tr. 12-13. Williams argues that the ALJ's credibility analysis is based on both an "incomplete review of the medical evidence" and "at odds with the

evidence of record."  Doc. 9 at 20.

When a claimant attempts to establish disability through his own testimony of pain and other subjective symptoms, the ALJ applies a three-part "pain standard." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  The pain standard requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Id.*  If the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, the ALJ then evaluates the extent to which the intensity and persistence of the claimant's pain limits his ability to work. 20 C.F.R. §§ 404.1529(b), 416.929(b).  The ALJ may consider the history and testimony, medical signs and laboratory findings, medical opinion evidence, and any other evidence of record describing how the pain affects plaintiff's daily activities and ability to work.  *Id.* §§ 404.1529(c), 416.929(c).

If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and

adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." *Id.* (internal citation omitted). While an ALJ's credibility determination need not "cite 'particular phrases or formulations," it "cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" *Id.* at 1210-11 (quoting *Foote*, 67 F.3d at 1561).

Here, the ALJ found plaintiff's testimony credible only to the extent it was consistent with his RFC determination that Williams could perform light work. The medical evidence before the ALJ, including the doctors' clinical findings and treatment notes, did not confirm the severity (*i.e.*, intensity, persistence, and limiting effects) of Williams' alleged pain. Plaintiff's testimony regarding his joint pain was properly discounted as inconsistent with the rather mild-moderate objective findings, including mild joint arthropathy of the shoulders, normal X-rays of the bilateral ankles and left hand, mild degenerative changes of the right hand,

unremarkable left knee, and minimal osteophyte formation in the post-ACL repair right knee. Tr. 12-13. His testimony regarding his heart problems was also properly discounted based on treating notes reflecting ongoing improvement and stability after surgery, a good prognosis, normal cardiac and neurological exams, and lack of sustained arrhythmia, endocarditis symptoms, or exercise intolerance. Tr. 13-14.

Finally, the ALJ observed that the treating notes were replete with references to plaintiff's regular golfing games. Tr. 13-14. Though "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252-53 (N.D. Ala. 2003) (quoting *Smith v. Califano*, 637 F.3d 968, 971-72 (3rd Cir. 1981) ("It is well established that transitory activity does not disprove disability")), the ability to regularly play golf, a lengthy game which requires not only periods of walking and standing but also a full range of motion of the extremities, undermines plaintiff's own testimony regarding disabling joint pain and fatigue. Tr. 13-14. *See Dooley v. Astrue*, 2010 WL 5834049, at *5 (S.D. Ga. Oct. 26, 2010), *adopted*, 2011 WL 673957 (S.D. Ga. Feb. 17, 2011) (playing golf, even with discomfort, negated the purported severity of

claimant's problems and pain); *Rivera v. Astrue*, 2010 WL 489830 at * 9
(M.D. Fla. Feb. 9, 2010) (biking and golfing eroded claimant's testimony
that he was disabled by knee and cardiac impairments). The ALJ's
credibility determination was supported by substantial evidence.

## C.    Past Relevant Work

Finally, plaintiff argues that the ALJ erred by finding him capable of
performing his past relevant work. Doc. 9 at 22-24. Though he focuses
on the VE's "sedentary" characterization of his past relevant work based
on his hearing testimony, doc. 9 at 23, the VE was entitled to synthesize
any of plaintiff's testimony made prior to and at the hearing regarding his
job duties and responsibilities, *see Bercaw v. Comm'r of Soc. Sec.*, 2014 WL
345723 (M.D. Fla. Jan. 30, 2014) (no error where claimant's testimony at
hearing differed from his earlier descriptions of his work), and the ALJ
was entitled to rely in turn upon the VE's testimony in determining
whether Williams could perform that work. *Leigh v. Comm'r of Soc. Sec.*,
496 F. App'x 973 (11th Cir. 2012); *see Hurtado v. Comm'r of Soc. Sec.*, 425
F. App'x 793, 796 (11th Cir. 2011) ("[e]ven assuming that an
inconsistency existed between the VE's testimony and the [Dictionary of
Occupational Titles (DOT)], the ALJ did not err by relying on the VE's

testimony because it 'trump[ed]' any inconsistent provisions of the DOT"); *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007) ("Our precedent establishes that the testimony of a [VE] 'trumps' an inconsistent provision of the DOT"); 20 C.F.R. § 404.1560(b)(2), SSR 82-61.

Because the case must be remanded for consideration of the VA disability rating, however, the ALJ's RFC assessment may be altered. The ALJ could find plaintiff limited to sedentary work, implicating a problem with the VE testimony unaddressed in either brief.

At the hearing, the VE testified that Williams' past relevant work as a Storage Superintendent was classified as light work by the DOT, but performed as sedentary. Tr. 51-53 (identifying his past relevant work as Storage Superintendent, DOT 184.167-114, but testifying that such work was substantively identical to Director, Industrial Operations (DIO), DOT 166.117-010). The VE testified that a hypothetical individual of plaintiff's age, education, and work experience, limited to light work with functional limitations based on plaintiff's medically determinable impairments, could perform the requirements of his past work as a Storage Superintendent/DIO as defined in the DOT. Tr. 54. He then

testified that such an individual could perform the requirements of work as a Storage Superintendent/DIO, even if limited to sedentary work, except that work as a Storage Superintendent would *not* be readily available in the "traditional market." *Id.* Because the ALJ did not further question the VE to figure out how many jobs, if any, would be available in the national or local economy at the sedentary level, it is unclear how severely eroded those numbers would be or whether such work would be available at all.[5] *See* Tr. 52-55.

Because the Court cannot conclude that on remand and consideration of the VA disability rating plaintiff's RFC assessment would not be further restricted to sedentary work, the Court cannot conclude

---

[5]    Work exists in the national economy if it exists in significant numbers either in the region where a claimant lives or in several regions of the country. *See* 42 U.S.C. §§ 1382c(a)(3)(B); 423(d)(2)(A); 404.1566(a); *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005). The Eleventh Circuit has held that "the appropriate focus is the national economy." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015); *see also Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987). As to what constitutes a "significant number" in this context, there is no bright-line rule:

> This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that "exists in significant numbers" under the statute and regulations. We have concluded, however, that the "appropriate focus under the regulation is the national economy," not the local economy in which the claimant lives.

*Atha*, 616 F. App'x at 934 (440 jobs locally and 23,800 jobs nationally sufficient). *See also Brooks v. Barnhart*, 133 F. App'x 669, 670-71 (11th Cir. 2005) (840 jobs nationally sufficient); *Allen*, 816 F.2d at 602 (174 jobs in the area, 1,600 jobs in the state, and 80,000 jobs nationally sufficient). Here, the ALJ failed to determine whether a single job existed in the "traditional market" that plaintiff could actually perform as sedentary, much less work that "exists in significant numbers."

that any work would be available for plaintiff to perform at the sedentary level. On remand, should the RFC assessment change, the ALJ must determine whether there is any work available in the national and local economy which he can perform at the sedentary level. 20 C.F.R. §§ 404.1512(g), 406.1566(a); *Brooks*, 133 F. App'x at 670-71 (citing *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) (whether there are a significant number of jobs is a question of fact to be determined by a judicial officer)).

## IV.  CONCLUSION

Because the ALJ failed to address the effect of the VA's disability rating, if any, on the RFC assessment and the number of available jobs that plaintiff could perform, the case should be **REMANDED** for reconsideration of the medical evidence under 42 U.S.C. § 405(g).

**SO REPORTED AND RECOMMENDED**, this __20th__ day of October, 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA